| | |
|---|---|
| Minute Order Form (06/97) | |

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 3289 | DATE | 8/13/2003 |
| CASE TITLE | USA ex rel. Thomas F. Asch, et al vs. Teller, Levit & Silvertrust | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___ .
(3) ☐ Answer brief to motion due___. Reply to answer brief due___.
(4) ☐ Ruling/Hearing on ___ set for ___ at ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(7) ☐ Trial[set for/re-set for] on ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    ENTER MEMORANDUM OPINION AND ORDER: Teller's Motion for Summary Judgment is granted. Judgment is entered in favor of the Defendant and against the Plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff | AUG 15 2003 | |
| | Notified counsel by telephone. | date docketed | 56 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | 03 AUG 14 PM 4:27 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS         FILED
                         EASTERN DIVISION

UNITED STATES OF AMERICA, ex.           |                AUG 1 3 2003
rel., THOMAS F. ASCH and                |
PEOPLE OF THE STATE OF                  |              JUDGE HARRY D. LEINENWEBER
ILLINOIS, ex. rel. THOMAS F.            |              U.S. DISTRICT COURT JUDGE
ASCH,                                   |
                                        |           Case No. 00 C 3289
              Plaintiffs,               |
                                        |
       v.                               |           Hon. Harry D. Leinenweber
                                        |
TELLER, LEVIT & SILVERTRUST,            |
P.C., an Illinois professional          |
corporation,                            |
                                        |
              Defendant.                |
```

### MEMORANDUM OPINION AND ORDER

The relator, Thomas Asch ("Asch"), filed this action on behalf of the United States and the State of Illinois against a law firm, Teller, Levit, & Silvertrust ("Teller"), alleging violation of the Federal False Claims Act, 31 U.S.C. S3729, and the Illinois Whistle blower Reward and Protection Act, 740 ILCS 175/3, through false reporting of delinquent student loan payments it had collected under contract with the Illinois Student Assistance Commission (the "ISAC"), a state agency. Since both the United States and Illinois have declined to pursue the case, Asch is permitted to maintain the case.

### BACKGROUND

ISAC insures loans to lenders providing student loans to Illinois residents. If the borrower defaults on the loan, ISAC



purchases it from the lender and is reimbursed by the federal government. ISAC then undertakes to collect the defaulted loan. The monies collected are divided between the federal government and ISAC. Since at least 1990, Teller has contracted with ISAC to perform collection and litigation services with respect to the delinquent loans. The contract obligates Teller to submit bi-weekly statements to ISAC detailing the money it has collected. At the time it files the statement, it is to forward to ISAC the net sum of money collected during the two-week period less its attorney fees and court costs incurred. At all relevant times Teller's fees have been 18% of the sums collected.

Asch's complaint is based on Teller's practice of not posting payments received in its office to a particular payee's delinquent account until the date Teller deposited the payment into the trust account it maintained on behalf of ISAC, which could be a lag of several days. Since Teller had reduced to judgment many of the delinquent accounts, a delay in posting a payment would have the effect of increasing post-judgment interest on that particular account if not completely paid. Increasing post-judgment interest, Asch argues, causes the student to pay a greater amount to ISAC which in turn has the effect of fraudulently increasing Teller's fees, because they are based on a percentage of the total amount collected. Teller contends that the practice of not posting the payments on the date of receipt resulted from its need to review a

check to insure that it contained no release language. It also blames clerical misjudgment and negligence for the delay. Teller also argues that, assuming payment in full by the student, ISAC would actually receive more money so it has suffered no injury. Teller also points out that it is contractually obligated to indemnify and hold ISAC harmless if any student made a claim directly against ISAC. There is no indication that any student ever did so. Asch answers that ISAC is not entitled to the extra money and should refund it because Teller's contract specifically disallows fees on overpayments.

## DISCUSSION

The federal False Claims Act provides in relevant part:

> (a) Liability for certain act. – Any person who –
>
> > (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government;
>
> > Is liable to the United States Government for a civil penalty.
> > . . .

31 U.S.C. § 3729. The IWRPA mirrors the federal False Claims Act language.

Teller's first argument is that there can be no violation of the Illinois Whistle blower Act because the ISAC contract provides

that any payment made to Teller are exclusively federal funds. The contract[1] provides as follows:

> C. Payments pursuant to this contract are subject to the appropriation of adequate funds by the General Assembly. It is understood that the said appropriation is of federal funds, and no state funds are involved in the payment of this paragraph. The Commission is acting as agent for the federal government in collection of federal funds.

Thus, Teller is paid out of state appropriated funds, because the state legislature must appropriate all federal funds it receives in addition to state funds raised through taxes. The Illinois Constitution does not distinguish between state and federal funds but speaks of "public funds" which must be appropriated by the legislature. Constitution of 1970, Art. 8, § 2. The State Act makes it a violation if a person "knowingly presents . . . to an employee of the State . . . a false or fraudulent claim for payment or approval." 740 ILCS 175/2(a)(1). Consequently, if Teller knowingly presented a false or fraudulent report of collection to the ISAC upon which it bases its fees and costs, it arguably would be in violation of the State Act. This is particular true in this case because, under the contract, the money collected was "the property of ISAC," and was to be kept in an trust account for the

---

[1] The record shows that there is a series of 11 annual contracts entered into between ISAC and Teller. The court has not perused each of the contracts to check for dissimilarity but the parties have suggested none. The court will therefore use the 2000 contract for the quotation.

benefit of ISAC. Teller does not suggest that the Federal Act does not apply so that this issue may therefore be somewhat academic: there is no claim that the Acts should be interpreted differently. See *People, ex. rel. Levenstein v. Salafsky*, (No. 2-01-0378) 2003 WL 21027281 (Ill. App. 2nd Dist. 2003).

There is a problem however with Asch's claim under either Act because there is simply no basis in the record submitted in support and opposition to the motion for summary judgment to support a finding of fraud on the part of Teller. Asch claims that the fraud is based on the lag between receipt of payment and crediting a judgment debtor's account, thus increasing the amount to be collected by the increased interest due to the delay.

To begin with we are talking about an infinitesimal amount of money. The average delay was no more than one or two days. As part of the supporting documentation with respect to its response, Asch has attached as an exhibit a compilation from Teller's records of the date and amount of payments, and the date of deposit. The court took two time periods at random from these records, viz., January 1 to January 15, 1998, and March 1 to March 15, 1998. The January period showed that 15 payments totaling $3,266.28 were received by Teller with a total of 25 days accumulated between the date of receipt of the payments and their deposit. This computes to an average payment of $217.28 and an average delay of 1.66 days. $217.28 X 9% (post judgment interest under Illinois law) ÷ 365 X

1.66 = $.089. Since Teller was entitled to 18% for its fee, the average account would earn it 1.6 cents. It could potentially receive a total of 24 cents based on the delay for all 15 accounts. The amount would be only marginally higher for the March period. In that period according to the exhibit, 25 payments were made totally $6,770.32. 42 late days were accumulated. Thus, the average payment was $270.81, and the average delay was 1.68 days. The same calculation would result in a potential increased commission of 50 cents to Teller.

However, with respect to those paying by check, since Teller did not deposit the check immediately, there is a corresponding delay in payment of the amount of the check into Teller's account by the drawee bank. The judgment debtor had the use of these funds during this time period, which is commonly known as the "float." Thus the judgment debtor has the benefit of the float for longer period than expected since in all cases the student's account is credited with payment prior to his checking account being debited. The claim that ISAC suffered any harm as a result of Teller's actions is even weaker. Under its agreement with ISAC, Teller is allowed to deposit the proceeds it collects in a trust account. The agreement obligated Teller to forward the sums collected twice a month. Thus the contract apparently gives Teller the benefit of the float between the time the money is paid into its account until the check it pays to ISAC clears. Thus ISAC has not been harmed by

the delay in deposit of the amounts Teller collected. Teller harmed itself by reducing the time period of the float. Asch does not argue that this float should have been the property of ISAC perhaps because the contract does not appear to require it.

The only case the court has been able to find that is at all similar on the facts is *Mid-State Fertilizer v. Exchange National Bank*, 877 F.2d 1333, 1337 (7th Cir. 1989). In that case, the plaintiff contended that the bank violated § 1962(a) of the RICO Act by perpetrating a pattern of fraud by what the plaintiff described as the bank investing in itself. Plaintiff and the bank entered into an agreement to establish a lock box into which customers' checks were to be deposited. Once these checks cleared the sums were to be credited to plaintiff's loan. The bank delayed crediting monies to plaintiff's loan after the checks cleared, increasing plaintiff's interest charges as well as benefitting itself by increasing the float. The court determined that there was no fraud since the bank did not hide from plaintiff what it was doing, so the case at most presented a possible breach of contract. In Asch's case, as we have seen, Teller did not even seek to play the float to its advantage. At most it was negligent in depositing the checks on a timely basis, thus depriving itself of the advantages of the float and extending the benefit of delay to the ISAC's judgment debtors. In no way did ISAC sustain any injury.

Asch cites *Consolidated Freightways v. Industrial Commission*, 269 N.E.2d 291, 294 (Ill. 1971) for the proposition that payment by check, is a conditional payment which becomes an absolute payment upon it being honored and the time of payment relates back to the time the check was delivered. This rule, however, has to do with the dates on which payments are made for purposes of default or statute of limitations and not for purposes of calculation of interest. Thus a payee cannot hold a check in order to extend a deadline for filing a claim. To rule otherwise would be to allow a claimant indefinitely to extend a statute of limitations by refusing to cash the check. The case does not appear to have any application to interest computation.

The cash payments do present a different situation. Obviously, payment in cash represents an immediate loss of the use of the money to the student. However by failing to deposit the cash immediately, Teller also forwent the use of the money. This would have no effect on ISAC because it ceded the benefit of the float to Teller by agreeing to accept twice monthly payments. It must be remembered that violations of these two Acts require Asch to prove a false or fraudulent claim which is "knowingly made." Knowing requires "actual knowledge," "deliberate ignorance," or "reckless disregard" for the truth or falsity of the claim. The parties presented the testimony of all of Teller's employees who had anything to do with the payments and deposits. There is not a

scintilla of evidence to support the argument that Teller had any idea that what it was doing was false or fraudulent. It presented a reason for the delay and the fact that Teller actually lost interest income as a result of the delay in depositing the funds makes the case for fraud non existent. At the very most the facts might allow a very weak conclusion that Teller negligently caused harm to itself, and this is not enough. *United States v. Sparks*, 939 F. Supp. 636, 638 (C.D. Ill. 1996). The conclusion that no false or fraudulent claim was made is reinforced by the decision of ISAC not to intervene in this action on its own behalf and by its decision to continue to contract with Teller to collect delinquent student loans.

## CONCLUSION

For the reasons stated herein, Teller's Motion for Summary Judgment is granted. Judgment is entered in favor of the Defendant and against the Plaintiff.

**IT IS SO ORDERED.**

                                  Harry D. Leinenweber, Judge
                                  United States District Court

Date: August 13, 2003